IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIANA MAXWELL                                    CV. 09-405-PK

                                                 FINDINGS AND
                          Plaintiff,             RECOMMENDATION

v.

KELLY SERVICES, INC.

                          Defendant.
_____

PAPAK, Magistrate Judge:

        Plaintiff Diana Maxwell alleges that her former employer, defendant Kelly Services,

discriminated against her on the basis of her pregnancy and unlawfully refused to reinstate her to

her former position after she returned from pregnancy leave.  Maxwell's amended complaint

states a common law claim for wrongful discharge as well as claims for pregnancy

discrimination and retaliation under Title VII, 42 U.S.C. § 2000, and Oregon Revised Statute

sections 659A.029 and 659A.030.  She also asserts a claim under the Family Medical Leave Act

(FMLA), 29 U.S.C. § 2617.  This court has jurisdiction under 28 U.S.C. § 1331 and 1367.

Defendant's motion for summary judgment (#36) is now before the court.  Defendant's motion

FINDINGS AND RECOMMENDATION – PAGE 1

should be granted in part and denied in part, as set forth below.

## BACKGROUND[1]

Plaintiff Diana Maxwell commenced employment with Kelly Services in August 2006. (Crispin Decl., #42, Ex. A at 3.)  Maxwell served as a temporary employee and worked approximately 40 hours per week.  *Id.* at 3-4.  During her tenure, Maxwell received a raise and promotion to a staffing supervisor position in Kelly's Hillsboro branch office.  (Crispin Decl. Ex. A at 3-4; Creps Decl., #40, Ex. A at 16.)  Maxwell hoped to become a permanent Kelly Services employee because that position provided better benefits.  (Crispin Decl., Ex. A  at 6-7.)  Julie Maxwell, the branch manager, testified that she tried to bring Maxwell on as a permanent employee but that Maxwell could not report to her directly because they were related. (Crispin Decl. Ex. B at 2.)

## I.    Maxwell's Assignment at Merix

At some point in May 2007, Kelly Services assigned Maxwell to the position of senior staffing supervisor for Merix, one of Kelly Services' clients, and gave Maxwell a raise.  (Crispin Decl., Ex. A  at 4, Ex. C at 4; Creps Decl. Ex. A at 7, 17; Creps Supp. Decl., #46, Ex. 1 at 2.) The parties dispute whether Tami Troxell, who served as an interim regional manager, played a part in the decision to assign Maxwell at Merix and, if so, whether she knew Maxwell was pregnant at the time.  Julie Maxwell testified that Kelly Services' on-site manager at Merix selected Maxwell for the position.  (Crispin Decl. Ex. B at 3' Ex. C at 6.)  The on-site manager testified that she thought the regional manager approved the decision, that it took place when a new regional manager was coming on, but that Troxell was not involved with their region at that

---

1  Maxwell's response to the motion for summary judgment cites to facts in the record that she did not set forth in her concise statement of facts.  Kelly Services did not object and I have considered the evidence she referred to in her brief.

FINDINGS AND RECOMMENDATION – PAGE 2

time.  (Crispin Decl. Ex. C at 6-7.)  The former regional manager left in early May, however, and Troxell served as an interim regional manager following his departure.  (Creps Decl. Ex. B at 26; Crispin Supp. Decl. Ex. 3 at 2.)  Troxell testified that she placed Maxwell at Merix after Julie Maxwell recommended Maxwell for the position.  (Crispin Decl. Ex. C at 4.)  The evidence does not indicate when Troxell knew that Maxwell was pregnant.  Rather, the evidence shows that Troxell first met Maxwell after Troxell came up to Portland to assist with the roll out of the Merix account.  (Creps Decl. Ex. B at 29, Ex. E at 2.)

After the move to Merix, Maxwell's job duties remained the same, but she now performed them for Merix on site at its two locations.  (Creps Decl. Ex. A at 16.)  Maxwell, however, no longer reported directly Julie Maxwell and therefore was eligible to become a permanent Kelly Services employee.  (Crispin Decl. Ex. B at 2-3, 26-27.)

Maxwell experienced problems at Merix.  Leah Milla, a Kelly Services employee assigned to assist at Merix, reported to Troxell that Maxwell did not meet report deadlines, did not call people back, was not on site when she was supposed to be, and was not meeting recruiting goals, among other performance issues.  (Creps Decl. Ex. E at 6-7, 8-9, 10, 14; Creps Supp. Decl. Ex. 1 at 15-16, 24-25.)[2]  Milla also brought some of those issues to the attention of Maxwell's on-site supervisor at Merix.  (Crispin Decl. Ex. C at 10.)  Maxwell's on-site supervisor, however, indicated that Maxwell's performance was satisfactory.  (Crispin Decl. Ex. I at 1.)  The supervisor also testified that Kelly Services salespeople over-promised recruiting capacity and Maxwell needed more resources to recruit the number of employees that Merix

---

2  Maxwell contends that a document submitted in conjunction with this testimony is unreliable because it is compromised of excerpts of email strings that Milla prepared and because Kelly Services has since destroyed the original email correpondence.  I do not address the matter because other evidence shows that Maxwell did not meet Merix's expectations.

required.  (Crispin Decl. Ex. C at 17-18, Creps Supp. Decl. Ex. 1 at 12-13.)  In addition, because

the computer system at Merix initially was not fully functional for Kelly Services' use, Maxwell

could not recruit on site and Kelly Services' branch office handled recruitment instead.  (Crispin

Decl. Ex. B at 3-4, 6, 32, Ex. C at 19-21.)  A Merix employee testified that Kelly Services had

initial problems with recruiting and that Merix asked for an additional person dedicated to

recruiting at the site.  (Crispin Decl. Ex. G at 6-8.)

      Approximately one month after Maxwell started at Merix, Troxell decided to remove

Maxwell from the Merix assignment.  (Crispin Decl. Ex. D at 10; Ex. E at 6.)  Troxell replaced

Maxwell with an employee who had less seniority and promoted that employee to permanent

status.  (Crispin Decl. Ex. B at 4, 27.)  In addition, Kelly Services assigned an additional

employee to work on the Merix account.  (Crispin Decl. Ex. C at 16-17.)

      Troxell testified that she removed Maxwell because she received complaints from the

client that Maxwell was not there and she was concerned that Maxwell was not meeting Merix's

recruiting requirements.  (Crispin Decl. Ex. E at 8; Creps Decl. Ex. C at 10-15.)  Maxwell's on-

site supervisor at Merix also testified that Maxwell's poor recruiting numbers prompted Kelly

Services to remove her from the Merix site.  (Creps Supp. Decl. Ex. 1 at 20-21.)  Maxwell's on-

site supervisor also testified, however, that both Troxell and Milla expressed concern over having

to train another person who Maxwell would replace when she returned from pregnancy leave.

(Crispin Decl. Ex. C at 23, Ex. I at 2.)  Neither Troxell nor Milla specifically stated, however,

that  Maxwell's maternity leave prompted the decision to remove her from Merix.  (Creps. Supp.

Decl. Ex. 1 at 20-21.)

      Julie Maxwell testified that she told Troxell that Maxwell intended to sue Kelly Services

FINDINGS AND RECOMMENDATION – PAGE 4

over the Merix removal.[3]  (Crispin Decl. Ex. B at 28.)  Troxell testified that Julie Maxwell never

told her that.  (Crispin Decl. Ex. E at 16).  Julie Maxwell testified that she asked Troxell to make

Maxwell a permanent employee and that Troxell denied the request and instead decided to give

Maxwell a dollar-an-hour raise to "keep her quiet."  (Crispin Decl. Ex. B at 28.)  Both parties

agree, however, that after Maxwell was removed from the Merix account, she remained a senior

staffing supervisor and received a dollar-an-hour raise, making her salary $17.50 per hour.

(Creps Decl. Ex. A at 25.)

      Maxwell followed up with Troxell regarding the decision to remove her from the Merix

account.  She sent an email in late June 2007, stating that she thought perhaps Kelly Services'

real motive was that she was pregnant and that it would be easier for Kelly Services to replace

her before she took pregnancy leave.  (Crispin Decl. Ex. A at 19-20, 42.)  Maxwell sent an

additional email to Troxell shortly thereafter asking why Kelly Services had not yet offered her a

position as a permanent employee, when it had offered permanent status, and the Merix position,

to a person with less seniority.  *Id.* at 44-45.  Troxell did not address Maxwell's concerns, and, in

mid-July, Maxwell asked Troxell for documentation of complaints from Merix.  *Id.* at 23, 47.

## II.    Maxwell's Medical Leave and Request for Reinstatement

      In mid-July 2007, Maxwell requested family medical leave for the birth of her child, to

commence in late September 2007 and last until mid-December 2007.  (Crispin Decl. Ex. A at

18, 39, Ex B at 38.)  Just before Maxwell went out on leave, Bryan Baker replaced Troxell as the

regional manager.  (Crispin Decl. Ex. A at 17.)  Troxell told Baker that Maxwell was on

pregnancy leave.  (Crispin Decl. Ex. E at 14-15.)  Baker testified that all he knew about Maxwell

---

3  Kelly Services argues that this evidence should be stricken as inadmissible hearsay.  I address
  that argument below.

FINDINGS AND RECOMMENDATION – PAGE 5

was that she had been an on-site coordinator and had moved back to work at Kelly Services'
Hillsboro branch office.  (Creps Decl. Ex. B at 4, Ex. F at 5.)

Although the parties offer conflicting evidence regarding whether Maxwell informed
Kelly Services that she intended not to return to work after the birth of her child, they agree that
Maxwell contacted Kelly Services in November 2007 regarding her desire to return to work.
(Crispin Decl. Ex. A. at 29; Creps Decl. Ex. A at 33.)  Kelly Services informed her that no
openings were available.  *(*Crispin Decl. Ex. A. at 29.)

The parties dispute whether Maxwell requested reinstatement to full-time work.  Maxwell
first spoke to Baker, the regional manager, and told him she was ready to return to her position.
(Crispin Decl. Ex. A at 30; Creps Decl. Ex. A at 33.)  Maxwell testified that she told Jeanne
Celorie, an employee at Kelly Services' Beaverton branch office, that she was willing to work
full time and that she wanted more than $12 per hour.  (Crispin Decl. Ex. A at 31-34.)  Kelly
Services, however, points to computer entries indicating that Maxwell told Julie Maxwell and
Jeanne Celorie that she only wanted to work 20 hours per week.  (Crispin Decl. Ex. A at 37-38.)

The parties also dispute the sincerity of Kelly Services' efforts to find a position for
Maxwell.  Julie Maxwell testified that, in November, the regional manager instructed the
branches to offer Maxwell a position that paid less money so that she would refuse a position and
then could not collect unemployment.[4]  (Crispin Decl. Ex. B at 10.)  The regional manager,
however, testified that he told the Beaverton branch manager that finding a position for Maxwell
was a top priority and that he never instructed branch managers to offer Maxwell a position she
would not accept.  (Creps Decl. Ex. B at 3; Creps Supp. Decl. Ex. 3 at 9.)

_____

4  Kelly Services argues that the testimony is speculative and constitutes hearsay.  I address that
    argument below.

FINDINGS AND RECOMMENDATION – PAGE 6

In December 2007, Kelly Services offered Maxwell an assignment to work for Allstate that month for $12 per hour.  (Crispin Decl. Ex. A at 32, 35.)  Maxwell testified that she turned it down because the assignment and pay were not comparable to her previous position.  (Crispin Decl. Ex. A at 32, 36.)  Kelly Services' records, however, indicate that Maxwell refused the position because it was "too long."  *Id.* at 36, 48-49.  In mid-December, Kelly Services fired the person who took over Maxwell's position at the Kelly Services' branch office when she left on pregnancy leave, but did not offer to return Maxwell to that position.  (Crispin Decl. Ex. B at 12-13.)

Between December 4, 2007 and January 16, 2008, Maxwell did not call in to indicate her availability.  (Creps Decl. Ex. A at 52.)  Maxwell knew Kelly Services expected her to call in approximately once per week.  (Crispin Supp. Decl. Ex. 5 at 2-3, 6.)  In addition, Kelly Services informed employees that it would treat failure to call in as an indication that the person either voluntarily quit or was not actively seeking work  *Id.* at 4-5, 13.  In practice, however, Kelly Services merely gave priority to people who called in.  (Crispin Decl. Ex. F at 6-7, Ex. H at 4.)

The parties dispute when the regional manager became aware that Maxwell threatened to pursue legal action.  Julie Maxwell testified that the regional manager told her she could not offer Maxwell her former position because Maxwell had decided to sue Kelly Services, but her testimony is unclear on whether that conversation took place in January or February of 2008.  (Crispin Decl. Ex. B at 13-16.)  Moreover, the regional manager testified that he did not know that Maxwell intended to sue Kelly Services until some time after Christmas, around February 2008.  (Creps Supp. Decl. Ex. 3 at 3-5.)  He further testified that he first learned of the suit from Kelly Services' legal department.  (Crispin Decl. Ex. F at 5.)  Finally, although neither party offered Maxwell's demand letter in evidence or provided other evidence of when Maxwell sent

FINDINGS AND RECOMMENDATION – PAGE 7

the letter, Kelly Services' reply brief indicates that Maxwell sent a demand letter in January 2008. (Reply in Supp. of Mot. for Summ. J., #44, at 10.)

In early February, Julie asked Maxwell if she was still looking to get back to work. (Creps Decl. Ex. A at 53, 55.)  Maxwell responded that she had three interviews and she would let Julie know if she needed anything.  *Id.* at 54-55.  Following that exchange, Maxwell did not follow up with Julie regarding employment.  *Id.* at 54.  Maxwell filed the present suit on March 2, 2009.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2). Summary judgment is not proper if material factual issues exist for trial.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court cannot weigh the evidence or determine the truth and must construe the evidence in the light most favorable to the nonmoving party.  *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted). Moreover, courts require very little evidence from a plaintiff to survive summary judgment in an employment discrimination case because the ultimate question is one that is most appropriately conducted by the fact-finder, upon a full record.  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000).

FINDINGS AND RECOMMENDATION – PAGE 8

## DISCUSSION

**I.      Evidentiary Objections**

Evidence submitted in a motion for summary judgment must satisfy the requirements of
Federal Rule of Civil Procedure 56. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).
Rule 56(e) provides, in pertinent part, that "[a] supporting or opposing affidavit must . . . set out
facts that would be admissible in evidence." Fed. R. Civ. P. 56(e).  Under that standard, the court
may consider evidence on summary judgment if the party offering it could present the evidence
in an admissible form at trial. *Fraser*, 342 F.3d at 1037.

The parties have raised several evidentiary objections.  With two exceptions, the parties'
disputes relate to evidence that is either irrelevant to my analysis or duplicative of other evidence
in the record.  The two exceptions relate to Kelly Services' objections to Julie Maxwell's
testimony that: 1) she told Troxell, the interim regional manager, that Maxwell intended to sue
Kelly Services; and 2) that Baker, the regional manager, told her that he intended to generate a
"work refusal."  Kelly Services argues that the testimony is hearsay.  Additionally, with regard to
the statements made by the regional manager, Kelly Services argues that the testimony is
speculative.  I address those objections because the evidence is relevant to my analysis.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial
or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).
Thus, a statement offered for a purpose other than to prove the truth of the matter asserted is not
hearsay. *Orsini v. O/S Seabrooke*, 247 F.3d 953, 960 (9th Cir. 2001) (holding that statements of
others that plaintiff repeated in his affidavit were not hearsay because they were relevant to prove
the effect the statements had on the plaintiff, not the truth of the matters asserted).  Additionally,
a "statement is not hearsay if . . . the statement is offered against a party and is . . . a statement by

FINDINGS AND RECOMMENDATION – PAGE 9

the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). "Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment." *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986) (citation omitted). When a court evaluates whether the proffering party provided the necessary foundation, it may consider the contents of the statement, but "the contents of the statement . . . are not alone sufficient to establish … the agency or employment relationship and scope thereof." Fed. R. Evid. 801(d)(2).

Julie Maxwell's testimony that she told Troxell that Maxwell intended to sue encompasses two statements. First, it includes Maxwell's statement that she intended to sue. The relevance of this statement, however, does not depend on its truthfulness. Rather, it is relevant to show its effect on the listener, Julie Maxwell, that she was aware of a potential threat to sue from Maxwell. Second, Julie Maxwell's testimony includes her own statement to Troxell that Maxwell intended to sue. This statement is relevant to show Troxell's knowledge of the threat. Moreover, this statement also constitutes a party admission because Maxwell offers it against Kelly Services and the evidence shows that Julie Maxwell made the statement while an employee of Kelly Services concerning a matter within the scope of her employment duties as a branch manager. I therefore find that the statements are admissible for the limited purpose of demonstrating that Troxell had knowledge that Maxwell threatened to sue.

Kelly Services objects that Julie Maxwell's testimony that the regional manager said he intended to generate a work refusal is both speculative and hearsay. Her testimony is not speculative to the extent that she recounts a conversation that took place between her and the regional manager. Moreover, the regional manager's statement is a party admission because

FINDINGS AND RECOMMENDATION – PAGE 10

Maxwell offers it against Kelly Services and has offered evidence that shows that the regional manager made the statement while serving as a Kelly Services employee and concerning a matter within the scope of his responsibilities.  I therefore find that the regional manager's statement is admissible.

## II.    Pregnancy Discrimination Under State and Federal Law – First Claim for Relief

Discrimination on the basis of "pregnancy, childbirth or related medical conditions" constitutes sex discrimination under Title VII.  42 U.S.C. § 2000e(k).  Employers must treat pregnant women "the same . . . as other persons not so affected but similar in their ability or inability to work."  *Id.*; *see also* Or. Rev. Stat. § 659A.029.  Maxwell alleges claims against Kelly Services for pregnancy discrimination pursuant to Title VII and Oregon Revised Statute sections 659A.030 and 659A.029, under a disparate treatment theory.  Specifically, she alleges that Kelly Services discriminated on the basis of pregnancy when it removed her from the Merix position and when it refused to reinstate her.

### A.    Prima Facie Case

Courts apply the same prima facie standard to federal and state claims for disparate treatment.  *See Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 657, 719 P.2d 1322 (1986) (adopting U.S. Supreme Court's formulation of prima facie case); *Harris v. Sutton Motor Sales*, No. 08-6308, 2010 U.S. Dist. LEXIS 2111, at *5 n.2 (D. Or. Jan. 8, 2010).  The plaintiff carries the initial burden to establish a prima facie case of discrimination.  *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  To meet that burden, the plaintiff must offer evidence that gives rise to an inference of unlawful discrimination, "either through the framework set forth in *McDonnell Douglas* . . . or with direct or circumstantial evidence of discriminatory intent."  *Vasquez v. County of Los*

FINDINGS AND RECOMMENDATION – PAGE 11

*Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (citation omitted).  Under *McDonnell Douglas*, a court presumes unlawful discrimination if the plaintiff can show that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably.  *Chuang*, 225 F.3d at 1123.  If the plaintiff succeeds in establishing a prima facie case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct.  *Id.* at 1123-1124.

Kelly Services challenges the second and third prong of Maxwell's prima facie case as it relates to Maxwell's removal from Merix.  Specifically, Kelly Services contends that Maxwell failed to establish that her performance at Merix met Kelly Services' legitimate expectations.  In addition, Kelly Services argues that its decision to remove Maxwell from the Merix position was not an adverse employment action.

### 1.    Qualified for the Position

To meet the second prong of the *McDonnell Douglas* prima facie test, a plaintiff need only establish that  she was qualified for the job according to objectively measurable criteria, such as level of education or years of experience.  *See Lynn v. Regents of Univ. of Cal.*, 656 F.2d 1337, 1344 (9th Cir. 1981) ("In our view, objective job qualifications are best treated at step one and subjective criteria, along with any supporting evidence, are best treated at the later stages of the process.").  Moreover, a plaintiff need only make a "minimal showing" at the prima facie stage.  *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 660 (9th Cir. 2002) (plaintiff established satisfactory performance with evidence that there were no formal write-ups for poor performance or disciplinary notices against him and that employer told him he could check back to see if he could be rehired).  Thus, at the prima facie stage, a plaintiff's self-assessment of

FINDINGS AND RECOMMENDATION – PAGE 12

performance is relevant.  *Id.*

Here, Kelly Services argues that Maxwell has failed to make a prima facie showing that she was qualified for the position at Merix because she has presented only her self-assessment of her competence.  Maxwell, however, has presented evidence that her immediate supervisor thought her performance at Merix was satisfactory.  In addition, Kelly Services placed Maxwell in a similar recruiting position after she left the assignment at Merix and gave her a raise. Therefore, reading the evidence in the light most favorable to Maxwell, she has met the minimal showing necessary to establish that she was qualified for the Merix position.

### 2.    Adverse Employment Action

Title VII's substantive anti-discrimination provision prohibits "discriminatory actions that affect the terms and conditions of employment."  *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006).[5]  Thus, a plaintiff cannot establish prima facie discrimination if she "was not demoted, was not stripped of work responsibilities, was not handed different or more burdensome work responsibilities, was not fired or suspended, was not denied any raises, and was not reduced in salary or in any other benefit."  *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000).

Here, reading the facts in the light most favorable to Maxwell, her removal from Merix

---

5  Title VII's anti-retaliation provision, "unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  *Burlington Northern*, 548 U.S. at 64; *see also Hunt v. City of Portland*, No. 08-CV-802, 2010 U.S. Dist. LEXIS 39067, at *29-30 (D. Or. Apr. 15, 2010).  Thus, in the retaliation context, an adverse employment action is one that would dissuade a reasonable worker from making or supporting a charge of discrimination.  *Burlington Northern*, 548 U.S. at 68.  Under this formulation, "a transfer to another job of the same pay and status may constitute an adverse employment action."  *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  That standard, however, does not apply to discrimination claims.

FINDINGS AND RECOMMENDATION – PAGE 13

made it less likely that she would become a permanent employee. Julie Maxwell testified that Maxwell's move to Merix made her eligible to become a permanent employee because she no longer reported directly to Julie. Maxwell testified that permanent employees had better benefits than temporary employees. In addition, the evidence shows that Maxwell's replacement at Merix became a permanent employee as soon as she received the Merix assignment. As a result, I find that Maxwell has presented evidence that the removal from Merix adversely affected the terms and conditions of her employment, despite that Maxwell performed similar recruiting duties and received a raise after her removal from Merix.

### B.    Legitimate Nondiscriminatory Reason

In the second *McDonnell Douglas* stage, the employer must assert a legitimate, nondiscriminatory reason for its adverse employment action. *Vasquez*, 349 F.3d at 641. The employer, however, "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted). Rather, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* at 254-255.

Here, Kelly Services asserts Maxwell's poor performance as its non-discriminatory reason for removing her from the Merix position and the lack of available part-time work as its non-discriminatory reason for refusing to reinstate Maxwell following her leave. In addition, Kelly Services has presented evidence of Maxwell's poor performance as well as evidence that indicates that she requested part-time work after the birth of her child. Thus, although Maxwell has presented conflicting evidence, Kelly Services has met its burden to articulate a legitimate,

FINDINGS AND RECOMMENDATION – PAGE 14

non-discriminatory reason for its actions.

### C.    Pretext

"Once the defendant produces evidence of a legitimate non-discriminatory reason to counter the plaintiff's demonstration of a prima facie case, the *McDonnell Douglas* presumption of discrimination drops out of the picture." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004) (citation omitted).  The plaintiff then bears the ultimate burden "to produce some evidence" suggesting that the defendant's adverse actions were "due in part or whole to discriminatory intent." *Id.*  A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Chuang*, 225 F.3d at 1124. In order to survive summary judgment, the plaintiff must raise a genuine issue of fact such that a reasonable factfinder could conclude that the employer "was motivated at least in part" by discrimination. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1041-1042 (9th Cir. 2005).  An explanation that the employer relied on inaccurate information is insufficient because "courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo*, 281 F.3d at 1063.

### 1.    Removal from Merix

Kelly Services argues that the same actor inference applies because Troxell selected Maxwell for the Merix position and removed her from that position.  "[T]he point of the same-actor inference is that the evidence rarely is sufficient . . . to find that the employer's asserted justification is false when the actor who allegedly discriminated against the plaintiff had previously shown a willingness to treat the plaintiff favorably." *Coghlan v. Am. Seafoods Co. LLC,* 413 F.3d 1090, 1094 (9th Cir. 2005) (citation omitted).  The inference does not amount to a

mandatory presumption of nondiscrimination but rather requires that the plaintiff present a "strong case of bias." *Id.* at 1098.

Here, the record is insufficient to give rise to the same actor influence.  Questions of fact remain regarding whether Troxell played a part in the decision to assign Maxwell to the Merix position.  In addition, assuming Troxell did approve Maxwell's assignment to Merix, the evidence does not indicate whether she knew Maxwell was pregnant at the time.  I therefore decline to apply the same actor influence here.

I also find that Maxwell has presented evidence that Kelly Services' decision to remove her from Merix was motivated in part by her pregnancy.  While undisputed evidence shows that Maxwell did not meet Merix's recruiting expectations, Maxwell has presented evidence that she was assigned at Merix only a short time, that Kelly Services had over-promised its recruiting capacity, and that there were computer problems initially.  In addition, when Kelly Services replaced Maxwell, it assigned two employees to do the recruiting for Merix.  Maxwell also presented evidence that her immediate supervisor knew about the recruiting problems but nonetheless characterized her performance as satisfactory.  Moreover, Maxwell's immediate supervisor testified that Troxell, the regional supervisor who removed Maxwell from the Merix site, expressed concern that Maxwell's pregnancy leave would negatively impact the Merix account.[6]  Finally, Troxell did not promptly respond to Maxwell's inquiries regarding the reasons why she was removed from the Merix site.  Taken together, this evidence raises a question of fact regarding whether Maxwell's performance problems at Merix were merely a pretext for Kelly

---

6  Kelly Services did not object to this testimony as hearsay.  I note, however, that the statements constitute a party admission under Federal Rule of Evidence 801(d)(2)(D), for the same reasons that other statements by Kelly Services employees are not hearsay, as discussed above in the section of evidentiary objections.

FINDINGS AND RECOMMENDATION – PAGE 16

Services' decision to remove her from the Merix position.  The court should accordingly deny Kelly Services' motion for summary judgment on Maxwell's pregnancy discrimination claim with regard to her removal from the Merix assignment.

### 2.     Failure to Reinstate

Maxwell's complaint alleges that Kelly Services' failure to reinstate her after her pregnancy leave was also motivated by pregnancy discrimination.  Maxwell has not presented any evidence that Kelly Services' refusal to reinstate her was motivated in part by pregnancy discrimination.  Maxwell was not pregnant when she requested reinstatement and Baker, the regional manager at the time she requested reinstatement, did not serve as her manager when she was pregnant.  Moreover, Maxwell's response to Kelly Services' motion for summary judgment does not address the refusal to reinstate as an aspect of her pregnancy discrimination claim.  The court should therefore grant Kelly Services' motion for summary judgment on Maxwell's pregnancy discrimination claim with regard to her request for reinstatement.

## II.     Retaliation in Violation of State and Federal Law - Second Claim for Relief

Courts analyze state and federal retaliation claims under a similar framework.  *Harris v. Pameco Corp.*, 170 Or. App. 164, 179, 12 P.3d 524 (2000) ("Title VII law is instructive in interpreting ORS 659.030."); *see also Pool v. Vanrheen*, 297 F.3d 899, 910 (9th Cir. 2002) ("Or. Rev. Stat. § 659A.030 was modeled after Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a), which prohibits similar conduct.").

### A.     Prima Facie Case

In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment

FINDINGS AND RECOMMENDATION – PAGE 17

action.  *Id.*  Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to

articulate a legitimate, non-discriminatory reason for its actions.  *Manatt v. Bank of Am.*, 339

F.3d 792, 801 (9th Cir. 2003) (citation omitted).  If the defendant meets that burden , the burden

shifts back to the plaintiff to establish that the defendant's explanation was merely a pretext for

impermissible retaliation.  *Id.*

Here, Kelly Services argues that Maxwell fails to establish that she engaged in protected

activity or, assuming she did engage in protected activity, that there is a causal connection

between the activity and the adverse employment action.  Alternately, Kelly Services argues that,

assuming Maxwell can establish a prima facie case, she has failed to present evidence of pretext.

### 1.    Protected Activity

An employee's statement does not constitute protected activity, "unless it refers to *some*

practice by the employer that is allegedly unlawful."  *EEOC v. Crown Zellerbach Corp.*, 720 F.2d

1008, 1013 (9th Cir. 1983). "It is not necessary, however, that the practice be demonstrably

unlawful; opposition clause protection will be accorded whenever the opposition is based on a

reasonable belief that the employer has engaged in an unlawful employment practice."  *Id.*

(citation omitted).  Moreover, a complaint need not be formal in order to constitute protected

activity.  *Ray,* 217 F.3d at 1240 n.3.

Here, Maxwell has presented evidence that she opposed what she perceived to be

pregnancy discrimination and opposed Kelly Services' refusal to reinstate her.  The evidence

shows that she sent an email to Troxell, her supervisor at the time, that questioned whether

Troxell's decision to remove Maxwell from Merix was due to her pregnancy.  In addition,

Maxwell has presented evidence that she told Julie Maxwell she would sue.  Finally, Kelly

Services admits that Maxwell sent a demand letter in January 2008.

FINDINGS AND RECOMMENDATION – PAGE 18

2.    **Causal Relationship**

A plaintiff may establish the causation element of a prima facie retaliation case by presenting "circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1376; *see also Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.")  "The Oregon Court of Appeals has characterized the causal link as a 'substantial factor' determination." *Pool*, 297 F.3d at 910 (citing *Seitz v. State ex rel. Albina Human Res. Ctr.*, 100 Or. App. 665, 675, 788 P.2d 1004 (1990)).  In *Seitz,* the plaintiff presented sufficient evidence of causation where she received satisfactory performance reviews prior to her complaint and a memo showed that her complaint was a basis for her suspension.  *Id.*

Here, while no evidence suggests that Baker knew about Maxwell's email to Troxell, Maxwell has offered evidence that Baker, the regional manager at the time Maxwell requested reinstatement, refused to return her to former position because she decided to sue Kelly Services. Both parties indicate that Maxwell sent a demand letter in January.  Julie Maxwell's testimony suggested that Baker made the statement in January or February.  Baker denied making this statement and indicated he learned of the suit from Kelly Services' legal department, some time after Christmas, around February 2008.  I find this evidence gives rise to a question of fact regarding whether Baker refused to reinstate Maxwell because she had threatened to sue Kelly Services.

Kelly Services contends that it refused to reinstate Maxwell because she requested part-time work and no part-time work was available.  Thus, Maxwell must come forward with

FINDINGS AND RECOMMENDATION – PAGE 19

evidence that Kelly Services' explanation is mere pretext.  *See Manatt*, 339 F.3d at 801.

### B.    Pretext

A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Yartzoff*, 809 F.2d at 1377.  When a plaintiff offers direct evidence of discriminatory motive, she creates a triable issue as to the actual motivation of the employer.  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).  "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Vasquez*, 349 F.3d at 640 (citation omitted).

Here, Maxwell has presented direct evidence of discriminatory intent sufficient to create a question of fact.  Her evidence indicates that Baker refused to return her to her former position because she had sued Kelly Services.  Kelly Services has presented conflicting evidence and the timing of Baker's statement is unclear.  Thus, this claim is one that a jury must resolve.  The court should accordingly deny Kelly Services' motion for summary judgment on Maxwell's retaliation claim.

### III.    Family Medical Leave Act Violation (Third Claim for Relief)

The FMLA provides a right for certain employees of covered employers to protected leave of absence from work for specified medical reasons.  Employees are eligible for protected leave under FMLA if they have been employed by a covered employer for at least 12 months, and for at least 1,250 hours during the previous 12 months.  29 U.S.C. § 2611(2)(A).  Employers are "covered" for purposes of FMLA if they employ "50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).  Employees eligible for protected leave under FMLA are

FINDINGS AND RECOMMENDATION – PAGE 20

entitled to "a total of 12 workweeks of leave during any 12-month period" for health-related medical purposes, including, in relevant part, "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter."  29 U.S.C. § 2612(a)(1)(A).  Here, the parties do not dispute that Maxwell was an eligible employee under the FMLA and thus entitled to protected medical leave for the birth of her child.

An employee who returns from protected medical leave is entitled to be returned to her original employment position or to an equivalent position, without loss of benefits.  *See* 29 U.S.C. § 2614(a)(1).  The employee, however, is not entitled to any right, benefit, or position of employment she would not have been entitled to, had she not taken leave.  29 U.S.C. § 2614(a) (3)(B).  An equivalent position is "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions," including "the same shift or the same or an equivalent work schedule." 29 C.F.R. § 825.215(a), (e)(2).

Here, Kelly Services argues that Maxwell did not seek an equivalent position because she stated she was only available for part-time work.  Maxwell, however, testified that she told Jeanne Celorie, an employee at Kelly Services' Beaverton branch office, that she was willing to work full time.  Kelly Services urges the court to disregard Maxwell's testimony as "self-serving" and "conclusive."

A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.  *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (plaintiff's testimony that she was not totally disabled failed to create a question of fact because the testimony flatly contradicted her earlier sworn statement and the medical evidence in the record); *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (finding no material question of fact where the plaintiff relied on

FINDINGS AND RECOMMENDATION – PAGE 21

affidavit that averred general facts based on "common knowledge"); *see also*

*United States v. Bright*, 596 F.3d 683, 695 (9th Cir. 2010) (district court did not err in

discrediting party's affidavit that she had sole responsibility for compliance with an IRS

summons where she and her husband had jointly defended the action); *Villiarimo*, 281 F.3d at

1059 n.5 (plaintiff testified that other employees in her position were punished less severely but

"provided no indication of how she knew this to be true").  Where, however, a party offers a

personal recollection of specific, material facts, then the court should not disregard it as

conclusory.  *See Orsini*, 247 F.3d at 960 n.4.

Kelly Services asserts that the facts here resemble those in two other decisions by this

court where the plaintiff's testimony was insufficient to give rise to a question of fact for the jury.

In *Gresham v. Safeway, Inc.*, the plaintiff failed to raise a question of fact regarding pretext on

her retaliation claim where she offered only her testimony that an assistant manager said she

would never become a manager but the evidence showed the assistant manager did not have

authority over training or promotion.  No. 08-6241, 2010 U.S. Dist. LEXIS 9864, at *14-16 (D.

Or. Feb. 2, 2010).  In *Dalton v. Sabo, Inc.*, the court disregarded plaintiffs' testimony that their

trucks "felt" as if they weighed less than 10,000 pounds where the defendant's evidence showed

the trucks had gross vehicle weight ratings in excess of 10,000 or actually weighed in excess of

10,000 pounds.  No. 09-358, 2010 U.S. Dist. LEXIS 32472, at *9-10 (D. Or. Apr. 1, 2010)

Here, Maxwell has offered her deposition testimony as evidence that she did not seek

part-time work.  Maxwell's testimony is relevant, specific and based on her personal knowledge.

She identified the people she spoke to and specifically stated that she requested either her former

position or comparable full-time work.  While her testimony conflicts with computer entries that

Kelly Services produced as evidence that she requested part-time work, I find no legitimate

FINDINGS AND RECOMMENDATION – PAGE 22

reason to prefer Kelly Services' evidence over hers. Thus, I find her testimony sufficient to raise a question of fact regarding her claim that Kelly Services violated the FMLA. The court should therefore deny Kelly Services' motion for summary judgment on Maxwell's FMLA claim, her Third Claim for Relief.

## IV.    Wrongful Discharge (Fourth Claim for Relief)

"Generally, employment is at will, absent a contractual, statutory or constitutional requirement to the contrary." *Carlson v. Crater Lake Lumber Co.*, 103 Or. App. 190, 193, 796 P.2d 1216 (1990). There are two types of exceptions: 1) when an employee is discharged for fulfilling an important societal obligation and 2) when an employee is discharged for exercising an employment related right of important public interest. *Id.* A plaintiff seeking to assert a common law claim for wrongful discharge, must fall under the one of the exceptions and establish there is no adequate statutory remedy. *Battan v. Allwest Underground, Inc.*, No. 08-CV-707, 2008 U.S. Dist. LEXIS 68735, at *16 (D. Or. Sept. 5, 2008) (citation omitted)

### A.    Adequate Statutory Remedy

"The tort of wrongful discharge was not intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question is unacceptable and no other remedy is available. *Id.* at *6-7 (citation omitted). The purpose of the tort "is not to vindicate individual interests of the employee by assuring that he or she receives the maximum possible recovery, but rather to protect important public policies by punishing conduct that thwarts those interests." *Id.* at *9-10 (citation omitted). As a result, "[a] claim for common law wrongful discharge is not available in Oregon if (1) an existing remedy adequately protects the public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that

FINDINGS AND RECOMMENDATION – PAGE 23

remedy to be adequate)." *Melendez v. Morrow County Sch. Dist.*, No. 07-875, 2009 U.S. Dist. LEXIS 108299, at * 75-76 (D. Or. Nov. 19, 2009) (citations omitted).

Until recently, some courts in this district found that plaintiffs who asserted discrimination claims under Title VII or Oregon Revised Statute 659A.030(1)(f) did not have an adequate statutory remedy "because Title VII cap[ped] compensatory and punitive damages, and ORS 659A.030(1)(f) limit[ed] recovery of economic damages." *Id.* at *77 (citations omitted).  In 2007, however, the Oregon Legislature enacted House Bill 2260, "which added § 659A.030 to the list of provisions for which a jury trial and compensatory and punitive damages are available." *Battan*, 2008 U.S. Dist. LEXIS 68735, at *16.  The Act applies to all actions filed after January 1, 2008, the date the Act became effective.  *Id.*  As a result, for cases filed after January 1, 2008, a wrongful discharge claim is not available to a plaintiff if the facts underlying the discharge claim also provide the basis for the plaintiff's discrimination or retaliation claim under Oregon Revised Statute section 659A.030.  *Melendez* , 2009 U.S. Dist. LEXIS 108299 at *75-76.

Here, Maxwell concedes that she cannot pursue a wrongful discharge claim for allegations related to her retaliation and discrimination claims under section 659A.030. Maxwell, however, contends that she also alleges wrongful discharge based on Kelly Services' decision to terminate her for exercising her employment-related right to reinstatement following medical leave.  She further asserts that the remedies under her FMLA claim are not adequate because they are limited to economic and liquidated damages.

Kelly Services concedes that Maxwell's remedies under the FMLA are inadequate. Maxwell alleges that she suffered non-economic damages as a result of Kelly Services' refusal to reinstate her.  The lack of emotional distress damages under the FMLA makes the statutory

remedy inadequate because it fails to "capture the personal nature of the injury done to a wrongfully discharged employee as an individual." *Earnest v. Georgia-Pacific Corp.*, No. 07-1559, 2008 U.S. Dist. LEXIS 96620, at *24 (D. Or. 2008). As a result, Maxwell may pursue a wrongful termination claim arising from the allegation that Kelly Services terminated her employment in retaliation for taking family medical leave, or for demanding reinstatement following her leave.

      **B.**      **Merits of the Wrongful Termination Claim**

A plaintiff prevails on a wrongful termination claim where the employer terminated the plaintiff's employment because plaintiff exercised an employment-related right of important public interest or performed an important societal obligation. *Patton v. J.C. Penney Co., Inc.*, 301 Or. 117, 120-121, 719 P.2d 854 (1986). Here, Kelly Services does not dispute that using statutorily provided medical leave is an exercise of an employment-related right that implicates the public interest. Rather, Kelly Services contends that Maxwell has failed to produce sufficient evidence that Kelly Services terminated her or, assuming she was terminated, that the termination was in retaliation for Maxwell's decision to take family medical leave.

      **1.**      **Whether Maxwell Was Terminated**

Maxwell does not claim that Kelly Services informed her that she was fired. Rather, Maxwell asserts that Kelly Services terminated her either when Baker decided to offer a job that was not comparable to her former position or when Baker refused to return Maxwell to her former position when it became available. I therefore analyze her claim as one for constructive discharge.

A forced resignation may support a claim for wrongful discharge. *Sheets v. Knight*, 308 Or. 220, 227-228, 779 P.2d 1000 (1989).

FINDINGS AND RECOMMENDATION – PAGE 25

> [T]o establish a constructive discharge, a plaintiff must allege and prove that (1) the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions or knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions.

*McGanty v. Staudenraus,* 321 Or. 532, 557, 901 P.2d 841 (1995):

Reading the facts in the light most favorable to Maxwell, she has presented sufficient evidence to suggest that she was constructively discharged. Although Kelly Services informed employees that it would treat failure to call in as an indication that the employee voluntarily resigned, other evidence indicates that, in practice, Kelly Services merely gave priority to employees who called in. More importantly, the evidence shows that Maxwell spoke to Kelly Services in November and December regarding her availability for work and was turned down the first time and offered an inferior position the second time. She has also presented evidence that Kelly Services offered her the inferior position knowing that she would refuse it. A reasonable jury could conclude from these facts that Kelly Services constructively discharged Maxwell by December when it offered her employment inferior to her former position.

## 2.    Causation

A plaintiff pursuing a claim for wrongful discharge must must establish a causal connection between a protected activity and the discharge. *See generally Shockey v. City of Portland*, 313 Or. 414, 422-423, 837 P.2d 505 (1992). "[T]he employee's protected activity must have been a substantial factor in the motivation to discharge the employee." *Estes v. Lewis & Clark College*, 152 Or. App. 372, 381, 954 P.2d 792 (1998) (citation omitted).

Here, Maxwell alleges that Kelly Services terminated her employment because she

exercised her right to family medical leave or because she demanded reinstatement following

leave. She has offered evidence that Baker, the regional manager at the time she requested

reinstatement, instructed the branches to offer Maxwell a position that paid less money so that

she would refuse a position and then could not collect unemployment. Reading this evidence in

the light most favorable to Maxwell, a reasonable jury could conclude that Kelly Services offered

her an inferior position because she had requested family medical leave.

## CONCLUSION

Kelly Services' motion for summary judgment (#36) should be granted in part and denied

in part. The motion should be granted with regard to Maxwell's First Claim for Relief only to the

extent that Maxwell alleges that the failure to reinstate constituted pregnancy discrimination.

The court should deny the motion with regard to Maxwell's First Claim for Relief to the extent

that claim alleges that the removal from Merix constituted pregnancy discrimination and should

deny the motion with regard to Maxwell's Second, Third and Fourth Claims for Relief.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation. If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

Dated this 26th day of May, 2010.

　/s/ Paul Papak　　　　　　　
Honorable Paul Papak
United States Magistrate Judge

FINDINGS AND RECOMMENDATION – PAGE 27